

**EXHIBIT B**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| MICHAEL LEWIS and ) | |
| DEENA MCLAUGHLIN ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No.: 2:25-cv-02361 |
| v. ) | |
| ) | TRIAL BY JURY REQUESTED |
| Officer DANIEL DONALDSON, ) | |
| in his individual and official capacities, ) | |
| ) | |
| and ) | |
| ) | |
| Officer THURMAN LEWIS, ) | |
| in his individual and official capacities, ) | |
| ) | |
| and ) | |
| ) | |
| CITY OF LANSING, Kansas, ) | |
| ) | |
| Defendants. ) | |

### FIRST AMENDED COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Michael Lewis and ~~DEENA MCLAUGHLIN,~~Deena Mclaughlin by and through counsel ~~of record JAY P. VAN BLARICUM~~Katie Barnett of Barnett Law Office, LLC~~, and,~~ and Tai J. Vokins and Danielle L. Davey of the law firm of Downing, Davey, Vokins & Mann, LLC, and for their First Amended Complaint for Damages against the above-named Defendants~~ for violations of their guaranteed and protected federal constitutional rights~~, allege as follows:

### JURISDICTION AND VENUE

1.   ~~1.~~This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367; 28 U.S.C. § 1343(a)(3); and venue is properly set in the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1391.

2.    ~~2.~~ The causes of action arise from factual allegations occurring in this judicial district.

3.    ~~3.~~ Each of the named Defendants is situated in this judicial district.

4.    ~~4.~~ Plaintiffs **MICHAEL LEWIS** and **DEENA MCLAUGHLIN** ("Plaintiffs") reside in the City of Lansing, Leavenworth County, State of Kansas.

5.    ~~5.~~ The Plaintiffs regarded the now-deceased, male Terrier mix named **AXEL** as their sentient personalty and immediate family member.

6.    ~~6.~~ **CITY OF LANSING** ("City") is a municipal corporation, organized under the laws of the State of Kansas, including for purposes of liability under 42 U.S.C. § 1983. It operates the **CITY OF LANSING POLICE DEPARTMENT** ("LPD"), the entity for which Defendants **DONALDSON** and **LEWIS** worked during the complained-of incident. <u>Plaintiffs name the City of Lansing directly and also assert official-capacity claims against the individual officers as necessary and to bind the City as the real party in interest. Plaintiffs do not seek double recovery and, to the extent the Court determines any capacity pleading is duplicative or unnecessary, Plaintiffs will proceed in the non-duplicative configuration (City and/or individual capacity) without prejudice to the merits.</u>

7.    ~~7.~~ Defendant **DANIEL DONALDSON** ("Donaldson") is, and at all germane times was, a resident of Leavenworth County, Kansas, and <u>an</u> employee and/or agent of LPD and <u>the</u> City, acting within the scope of his employment for purposes of state law~~,~~ and under color of state law for purposes of federal law. He is ~~being~~ sued in ~~his individual and official capacities~~<u>both his individual and official capacities; however, to the extent any official-capacity claim is deemed duplicative of the claim against the City of Lansing, Plaintiffs plead</u>

in the alternative and will proceed in the non-duplicative capacity as the Court directs, without waiver of any theory of municipal liability.

8.    ~~8.~~ Defendant ~~THURSTON~~**THURMAN LEWIS** ("Lewis") is, and at all germane times was, a resident of Leavenworth County, Kansas, and an employee and/or agent of LPD and the City, acting within the scope of his employment for purposes of state law~~,~~ and under color of state law for purposes of federal law. He is ~~being~~ sued in ~~his individual and official capacities~~both his individual and official capacities; however, to the extent any official-capacity claim is deemed duplicative of the claim against the City of Lansing, Plaintiffs plead in the alternative and will proceed in the non-duplicative capacity as the Court directs, without waiver of any theory of municipal liability.

9.    ~~9.~~ Plaintiffs' claim for attorney's fees and costs is authorized by, *inter alia*, 42 U.S.C. § 1988. No administrative claim filing or other pre-litigation requirements apply to their claims against Defendants under 42 U.S.C. § 1983.

10.    ~~10.~~ On August 30, 2024, the City was mailed via certified letter a *Notice of Claim* on behalf of Mr. Lewis and Ms. McLaughlin in full compliance with claim-notice laws~~.~~, including but not limited to K.S.A. 12-105b. More than ~~sixty~~ one hundred twenty (120) days have elapsed since the Plaintiffs sent the notice of claim to the City.

11.    ~~11.~~ This court has personal jurisdiction over the Defendants.

## **GENERAL ALLEGATIONS**

12.    ~~12.~~ At all times relevant to this cause of action, Mr. Lewis and Ms. McLaughlin owned Axel, a medium brown mixed-breed Terrier dog, and had owned Axel for approximately one month.

13.    ~~13.~~ On or about ~~March~~May 10, 2024, Defendants Donaldson and Lewis were employed as law enforcement officers by Defendant City of Lansing and on-duty and acting within the scope of their employment with Defendant City of Lansing.

14.    ~~14.~~ Plaintiffs Michael Lewis and Deena McLaughlin hereby bring this case against Defendants Donaldson and Lewis, in their individual and official capacities as empowered police officers of the City of Lansing, Kansas, and as state officials, for the unlawful seizure by killing and destruction of Axel, Lewis and McLaughlin's beloved dog and companion animal without due process of law, in violations of their protected Fourth and Fourteenth Amendment rights, pursuant to and as authorized under 42 U.S.C. § 1983, and against Defendant City of Lansing, Kansas, a municipal corporation and body politic, for its failures to properly and adequately train and supervise Defendants Donaldson and Lewis as empowered police officers and agents in its employ, pursuant to and under theories of municipal liability ("*Monell*" liability). Pursuant to the United States Supreme Court's opinion in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality is subject to liability under § 1983 when the violation of the plaintiff's federally protected right can be attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker. Further, "[T]he decision not to take any action to alleviate [constitutional violations] constitutes a policy for purposes of § 1983 municipal liability." See *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992).

15.    ~~15.~~ As pleaded and set forth in detail below, on or about ~~March~~May 10, 2024, at 11:55 a.m., Defendant Daniel Donaldson responded to a call from Lansing Police Department dispatch reporting an at-large dog chasing cars and barking. The initial report did not indicate the dog was exhibiting aggression or combativeness toward a person or another domestic animal.

16.    ~~16.~~ In fact, Defendants Donaldson and Lewis initially sought assistance in locating Axel's owner and keeping Axel safe until the owner was located. After visiting several residences to inquire about the dog, Defendant Donaldson observed a medium-sized, mixed-breed dog, barking at cars in a Lansing neighborhood at 12:14 p.m. Defendant Donaldson parked in a resident's driveway and attempted once to catch the dog, who Plaintiffs later identified as Axel, by retrieving his catchpole from his vehicle.

17.    ~~17.~~ With multiple neighbors watching, Defendant Donaldson approached Axel, stood watching him, whistled to him a few times, and gave up on capturing him after 93 seconds. Defendant Donaldson then returned to his truck, put away the catchpole, told onlooking neighbors he "didn't want to shoot a dog" and he was "glad I didn't shoot it right then and there, that would've been weird."

18.    ~~18.~~ Defendant Donaldson returned to the LPD station to speak with the records clerk, seeking information about the dog's owners. After talking with the Reporting Party (Seth Persinger), and checking public records, Defendants Donaldson and Lewis determined the dog's owners, Ms. McLaughlin and Mr. Lewis, resided at 705 E. Beth Street. When Defendants Donaldson and Lewis arrived at the Lewis/McLaughlin residence at approximately 1:20 p.m., Axel was indeed standing in the driveway next to the house by the side door.

19.    ~~19.~~ Defendant Lewis got out his baton, showing he knew and was prepared to use a nonlethal method of defense, capture, or restraint. Defendant Donaldson's report of the incident states the purpose of his visit was to "inform the dog's owners to retrieve their dog."

20.    ~~20.~~ At 1:20 p.m., both officers stepped onto Plaintiffs' property and immediately walked directly toward Axel, who was standing in his owners' driveway. Axel began barking as they approached. Ms. McLaughlin came out of the house when she heard Axel barking at the

officers, and immediately told the officers that he must have gotten off his tether from their property. At this point, the officers had knowledge that Axel was in his own yard and Plaintiff was able to restrain him.

21.    21. Axel walked toward the officers, wagging his tail and barking. Ms. McLaughlin called Axel by name to come back, closely following him as he approached the officers. Instead of retreating or asking Ms. McLaughlin to restrain Axel, Defendant Donaldson aimed his firearm at Axel and moved toward Axel. Naturally, Axel moved out of Defendant Donaldson's way and behind him. Defendant Lewis shouted to Defendant Donaldson, "don't do it, don't do it …no, no, don't" but Defendant Donaldson fired two shots into Axel's hindquarters, within mere feet of Ms. McLaughlin's position. Immediately after the shots, Defendant Lewis said "oh, shit, yep" to himself. Axel screamed in pain and agony for 35 seconds and appeared to have a lower spinal injury, whereby he was screaming and dragging his legs behind him. Deena backed away with her hands to her face after Defendant Donaldson shot Axel, saying "Oh my God" repeatedly. Defendant Lewis told Defendant Donaldson "finish him, finish him, finish him."

22.    22. A wounded but alert Axel started using his front legs to try to crawl away from Defendant Donaldson and toward Ms. McLaughlin to safety, still screaming in fear and pain. Deena walked toward Axel and said "Axel, Axel, come here." From her words and actions, it is obvious that Deena wanted to take Axel in her arms and get him medical attention for the gunshot wounds. Instead of letting the owner take control of her injured dog, both Defendant Donaldson and Lewis aggressively gestured for Deena to get away from the dog, to "get back, back up." Deena asked, "I can't take him?" Defendant Lewis immediately yelled "No, we need to finish it." Defendant Donaldson then walked up to the terrified, screaming, injured dog and shot him point blank in the head while Axel looked up at him.

23.    ~~23.~~ Rather than safely keep Axel safe until Plaintiffs Lewis and McLaughlin could be notified and retrieve him, as originally intended, Defendant Donaldson "resolved" the call by clumsily shooting Axel in the hindquarters~~,~~ and finally executing him.

24.    ~~24.~~ Defendants Donaldson and Lewis' warrantless seizure of Axel was unnecessary, callous, and egregious as it was unwarranted by law and violative of Plaintiffs Lewis and McLaughlin's most fundamental and guaranteed constitutional rights. At no time during the encounter between Axel and Defendant Donaldson did Axel show any aggression towards Defendant Donaldson, only avoidance. Axel was on his owner's property and barked at the approaching officers, displaying normal dog behavior, but Defendant Donaldson kept advancing and drew his service weapon, even when the owner exited the home to talk to the police and take control of her dog: an opportunity Defendants Donaldson and Lewis denied her.

25.    ~~25.~~ Plaintiffs Lewis and McLaughlin assert Defendants Donaldson and Lewis had no reasonable fear that Axel presented any threat to them or anyone else. Indeed, the smaller Axel could not have posed any threat of great bodily harm to the much larger and stronger Defendants Donaldson and Lewis even if he had been so inclined. For example, in 2008, in *Viilo v~~.~~ Eyre*, 547 F.3d 707 (~~7th Cir.~~ C.A.7 (Wis.), 2008) the 7th U.S. Circuit Court of Appeals concluded that "the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger, and the use of force is **unavoidable** (emphasis added)." Defendant Donaldson initially told Plaintiffs Lewis and McLaughlin that his reasoning for shooting Axel in his owners' front yard was  because he believed Axel was charging at him. However, Defendants Donaldson and Lewis had spent nearly one hour searching for Axel's owners and had safely encountered Axel earlier in the day. During that first encounter, at 12:14 p.m., Defendant Donaldson failed to make a good faith attempt at using a catchpole or any other non-lethal means of apprehension and simply gave

up after less than two minutes. Also, during the Defendant Officers' search for Axel, Axel was never alleged to have attacked or charged at any living thing.

26.    ~~26.~~ Ultimately, Defendants Donaldson and Lewis have no legal excuse or justification for ~~their~~his actions and ~~the~~his killing of Axel was the direct result of ~~their~~his own ineptitude in improperly using ~~an~~his issued catchpole~~—~~, a device routinely and successfully used by countless animal control officers and law enforcement officers across this country on a daily basis~~—~~, to perform the simplest municipal task of safely taking custody of a dog.

27.    ~~27.~~ As further pleaded and set forth in detail below, Defendant City of Lansing bears municipal liability for its part and actions in Defendants Donaldson and Lewis's unlawful seizure and killing of Axel. Defendant City of Lansing's training and supervision of Defendants Donaldson and Lewis was so woefully inadequate that Defendants Donaldson and Lewis, both allegedly trained and capable law enforcement officers entrusted with firearms and public safety, could not even use a common and simple animal control device, namely their City-issued catchpole, to catch a lost dog. Moreover, based on information and belief, and statements made by Defendant Donaldson, it appears that the City engaged in no or almost no training, supervision, or discipline of its officers as it relates to dog-related encounters.

28.    ~~28.~~ Further, based on statements made by Defendant Donaldson to Plaintiffs Lewis and McLaughlin, while the City had ordinances and procedures for the safe impoundment of lost or stray animals, it neither trained ~~its~~their officers on these procedures nor put in place any mechanism for implementing them. Ultimately, Axel's death and Defendants Donaldson and Lewis's egregious violation of Plaintiffs Lewis and McLaughlin's protected Fourth and Fourteenth Amendment rights were the direct result of Defendant City of Lansing's failures to properly train,

supervise, and discipline its officers and failures to maintain proper mechanisms for the completing of the most basic and common of municipal tasks of catching and impounding lost and stray dogs.

29. ~~29.~~ Defendant Donaldson's killing of Axel was effectuated without a warrant or judicial authorization.

30. ~~30.~~ There was no urgency, emergency, or exigency necessitating Axel's destruction as Axel was neither aggressive nor posing any threat to Defendant Donaldson or anyone else. The officers had safely encountered Axel earlier in the day, therefore no "split-second decision" was required as in *Carroll v. County of Monroe*, 712 F.3d 649 (~~2d~~2nd Cir. 2013). Further, one of Axel's owners, Ms. McLaughlin~~,~~ was present, willing, and able to control or contain him if given the opportunity.

31. ~~31.~~ Pursuant to Defendant City of Lansing Ordinance § 2-102: "*Officer* shall mean City Animal Control Officer or City Police Officer."

32. ~~32.~~ Pursuant to Defendant City of Lansing Ordinance § 2-308, "Officers" are to address~~,~~ and resolve lost or stray dogs as follows:

> "A dog, cat or other animal found running at large or in violation of the articles within this chapter, situated within the corporate limits of the City, may be taken up by the officer or brought in by a member of the public and may be impounded at any facility with which the City has contracted for animal sheltering services. The officer shall make a record of all dogs or cats so impounded with their description, date of impoundment and rabies vaccination number if available. If, within four (4) business days from the date any dog or cat is impounded and the owner of such dog or cat shall appear and claim his or her dog or cat, said dog or cat may be released upon payment of the applicable impoundment fees as set forth in the contract then in effect between the City and the facility providing the sheltering services."

33. ~~33.~~ The use-of -force continuum in animal control circumstances is prescribed in Defendant City of Lansing Ordinances § 2-311 as follows: "The Chief of Police or his/her ~~designee~~ designate shall be authorized to use a tranquilizer gun or Taser in the enforcement of this

chapter. He/she shall be authorized to tranquilize/stun an animal which is impractical or impossible to catch or capture." According to the Ordinance, only when the officer or another human being is in threat of great bodily harm from the animal, or the animal has critically injured another animal, may lethal force be employed against the animal.

34. ~~34.~~ Defendant City of Lansing was clearly aware of the need for animal control and the proper resolution of issues involving lost or stray dogs, designating its law enforcement officers to fulfill that role (§ 2-102); designating a place and process for where and how to house lost and stray animals (§ 2-308); and specifying a policy and mechanism for owners to reclaim lost dogs who had been impounded by the City (§ 2-308).

35. ~~35.~~ Contrary to Defendant Donaldson's denial of the fact that Defendant City of Lansing had <u>an</u> animal control, Defendant City of Lansing did have animal control and, pursuant to Defendant City of Lansing ordinance, it was Defendant Donaldson himself, as a police officer of Defendant City of Lansing.

36. ~~36.~~ While speaking to Mr. Lewis, Defendant Donaldson made statements indicating that he had not received, been given, or had "taken" any training regarding dogs, evaluating the condition of dogs, evaluating dog behavior, and/or basic animal control functions, including simply catching stray dogs.

37. ~~37.~~ Defendant Donaldson's improper use of the catchpole, incompetence using the device, clear lack of understanding of how the device operated, and inability to employ non-lethal methods of ~~de-escalating~~<u>deescalating</u> a tense situation displayed a clear and obvious lack of training regarding his job duties, local ordinances, and best and proper animal control practices.

38. ~~38.~~ Upon information and belief and statements made by Defendant City of Lansing officials after the shooting of Axel, Defendant City of Lansing had not previously provided any

training to Defendants Donaldson or Lewis on the safe, effective, and proper performance of their animal control duties.

39.    ~~39.~~ The fact that Defendant Donaldson claimed to be unaware that he was supposed to act <u>as</u> in an animal control capacity for the City (stating to Mr. Lewis that "we don't have animal control"), evinces Defendant City of Lansing's clear lack of training of its officers and employees and utter disregard for the rights of the citizens of Lansing and their pets and animals.

<u>40.    Pursuant to Fed. R. Civ. P. 10(c) and 8(d)(2)–(3), all factual allegations set out in ¶¶1–39 (and any factual paragraphs preceding the Claims for Relief) are incorporated by reference into each claim for relief as though fully set forth therein. Allegations apply only to the defendants and elements relevant to that claim and are pled in the alternative to the extent of any inconsistency.</u>

## CLAIMS FOR RELIEF

~~40.~~<u>41.</u>   ~~40.~~ The City is liable to Plaintiffs based on the following legal claims and doctrines, stated in the alternative under FRCP 8(d)(2), and based on direct and vicarious liability for pendent state claims (e.g., respondeat superior [imputing fault to City based on acts and omissions of Defendants Donaldson and Lewis]). All allegations above are incorporated by reference and reasserted as to the claims below.

~~41.~~ **FIRST CLAIM (~~Daniel~~ Donaldson) –** ~~Violation of Federal Constitutional Guarantees (~~**42 U.S.C. § 1983**~~), as to~~

**Unreasonable Seizure of Property (Axel) – Individual Capacity**

<u>42.    All of the foregoing paragraphs are hereby incorporated by reference.</u>

~~41.~~<u>43.</u>  Defendant Daniel Donaldson, whose actions were taken under color of law, ~~violating~~<u>violated</u> clearly established rights, of which a reasonable person would have been aware at the time those actions of omission and commission were taken by him. Donaldson unlawfully

and unconstitutionally seized Plaintiffs' personalty, to wit, Axel, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

44.    42. Donaldson seized Plaintiffs' property by shooting and killing Axel.

45.    The seizure occurred without a warrant or judicial authorization.

46.    At no time did Axel pose an immediate threat to officers or others; non-lethal and less intrusive alternatives were available and feasible (e.g., owner command/control, retreat, baton, catch-pole, disengagement).

47.    The use of lethal force to destroy Axel was objectively unreasonable under the Fourth Amendment.

48.    A Fourth-Amendment seizure of property occurs with "meaningful interference" in possessory interests; warrantless seizures are per se unreasonable absent a narrow exception.

49.    Donaldson's conduct violated clearly established law and proximately caused Plaintiffs' injuries.

50.    As a direct and proximate result, Plaintiffs suffered damages (including constitutional injury, emotional distress from the destruction of their property, and consequential losses).

51.    Plaintiffs seek compensatory damages and punitive damages against Donaldson in his individual capacity, and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

**SECOND CLAIM (**~~Thurston~~ **Lewis) –** ~~Violation of Federal Constitutional~~

~~Guarantees~~ **(42 U.S.C. § 1983**~~), as to~~

**Failure to Intervene / Aiding–Ratification – Individual Capacity**

52.    All of the foregoing paragraphs are hereby incorporated by reference.

~~42.~~53.  Defendant ~~Thurston~~Thurman Lewis, whose actions were taken under color of law,

violating violated clearly established rights, of which a reasonable person would have been aware at the time those actions of omission and commission were taken by him. Lewis aided, abetted, and ratified the unlawful and unconstitutional seizure of Plaintiffs' personalty, to wit, Axel, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

54.    43. Lewis encouraged and/or ratified the unconstitutional force by urging a "finish him" shot after Axel was incapacitated.

55.    Alternatively and/or additionally, Defendant Lewis observed or had reason to know that Defendant Donaldson was using unconstitutional force and had a realistic opportunity to prevent or stop it but failed to intervene.

56.    Defendant Lewis's omissions and/or encouragement were a proximate cause of Plaintiffs' injuries.

**LEGAL STANDARDS APPLICABLE TO CLAIMS ONE & TWO**

**(Fourth Amendment / Qualified Immunity)**

43.57.  As secured and guaranteed by the Fourth Amendment to the Constitution of the United States of America, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

44.58.  44. The Fourteenth Amendment's Due Process Clause states: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."

45.59.  45. As defined by the United States Supreme Court, a Fourth Amendment seizure of property occurs whenever there is "some meaningful interference with an individual's individual's possessory interests in that property." See *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61–62 (1992) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

46.60.  46. As repeatedly recognized and well-established by the federal courts, the seizure

of a family pet and dog by injuring or killing him or her can give rise to a claim for an unlawful

seizure of property in violation of the Fourth Amendment. See *Love v. Grashorn*, No. 23-1397,

2025 U.S. App. LEXIS 9515 (10th Cir. Apr. 22, 2025); *Mayfield v. Bethards*, 826 F.3d 1252, ~~2016~~

~~U.S.~~

~~App. LEXIS 11096~~ (10th Cir. 2016); *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918

(8th Cir. 2006); *San Jose Charter of the ~~Hells~~Hell's Angels v. City of San Jose,* ~~California,~~ 402

F.3d 962, 975 (9th Cir. 2005~~) ("We have recognized that dogs are more than just a personal effect.~~

~~The~~

~~emotional attachment to a family's dog is not comparable to a possessory interest in furniture.").~~

~~).~~ Even if Defendants had not ultimately killed Axel, their shooting seriously injured Axel and thus

was a meaningful interference with Plaintiffs' possessory interests ~~in their property. United States~~

~~v. .~~ See *Jacobsen*, 466 U.S. ~~109,~~at 113 ~~(1984);;~~ *McCarthy v. Kootenai County*, 2009 U.S. Dist.

LEXIS 105439 (D. Idaho Nov. 12, 2009).

~~47.~~61.   ~~47.~~ Also well-established by the federal courts, warrantless searches and seizures

are considered per se unreasonable unless they fall within one of the few and "well-defined"

exceptions to the warrant ~~requirements.~~requirement. See *United States v. Place*, 462 U.S. 696,

700–02 (1983); *Katz v. United States*, 389 U.S. 347, 357 (1967); *Mayfield ~~v. Bethards~~*, 826 F.3d

at 1256.

~~48.~~62.   ~~48.~~ On or about ~~March~~May 10, 2024, Plaintiffs Lewis and McLaughlin were the

lawful owners of Axel, Plaintiffs' pet and companion animal, and Plaintiffs

~~Lewis and McLaughlin~~ had protected Fourth and Fourteenth Amendment rights in Axel as their

property and constitutional ~~"effects."~~effect.

~~49.~~63.   ~~49.~~ On or about ~~March~~May 10, 2024, Defendants Daniel Donaldson and

~~Thurston~~Thurman Lewis, while acting under color of state law, meaningfully interfered with ~~Plaintiffs Lewis and McLaughlin's~~Plaintiffs' protected possessory interests in Axel by shooting and killing the dog without due process of law.

50.64.  ~~50.~~Defendants' killing of Axel was effectuated in the absence of a lawfully issued warrant and/or without judicial authorization, thereby rendering their actions presumptively per se unreasonable.

51.65.  ~~51.~~Axel, at no time on or about ~~March~~May 10, 2024, posed or presented any danger to Defendants nor anyone else.

52.66.  ~~52.~~Rather than resorting to shooting and killing Axel when Ms. McLaughlin exited her home to bring in Axel, Defendants ~~Donaldson and Lewis~~could have stood back and simply demanded that Ms. McLaughlin take control of her dog.

53.67.  ~~53.~~ "The "Fourth Amendment forbids the killing of a person's dog, or the destruction of a person's property, when that destruction is unnecessary—i.e., when less intrusive, or less destructive, alternatives exist. ~~A reasonable officer should have known that to create a plan to enter the perimeter of a person's property, knowing all the while about the presence of dogs on the property, without considering a method for subduing the dogs besides killing them, would violate the Fourth Amendment."."~~ *San Jose Charter of the* ~~Hells~~*Hell's Angels* ~~v. City of San Jose, California~~, 402 F.3d ~~962,~~at 975 ~~(9th Cir. 2005).~~.

54.68.  ~~54.~~Based on the facts and circumstances of this matter, Defendants ~~Donaldson and Lewis~~are not entitled to ~~any claim of~~qualified immunity. ~~The availability of qualified immunity turns on the existence of an imminent danger to Defendant Donaldson. Love v. Grashorn, at~~

~~14–15.~~ It is clearly well-established within this Circuit ~~as well as other circuits~~and others that "an officer commits an unreasonable, warrantless seizure of property, in violation of the Constitution, when he shoots and kills an ~~individual's~~individual's family pet when that pet presented no danger and when non-lethal methods of capture would have been successful." *Andrews* ~~v. City of West Branch,~~

~~Iowa,~~ 454 F.3d ~~914,~~at 918 ~~(8th Cir. 2006) (citing Brown v. Muhlenberg Twp., 269 F.3d 205, 210–11~~

~~(3d Cir. 2001) (emphasis added));~~; see also *Mayfield* ~~v. Bethards~~, 826 F.3d at 1256; ~~Fuller v. Vines, 36 F.3d 65, 68 (9th Cir. 1994);~~ *Maldonado v. Fontanes*, 568 F.3d 263 (1st Cir. 2009).

55.69.   ~~55. In no uncertain terms,~~ A police officer's shooting of a privately owned animal~~, which~~ that does not ~~"~~pose an immediate threat to the officer or others~~,"~~ constitutes a clearly established

~~violation of the~~ Fourth~~-~~Amendment violation. See *Love* ~~v. Grashorn, at 14–15~~, 2025 U.S. App. LEXIS 9515; *Ray v. Roane*, 948 F.3d 222, 229–30 (4th Cir. 2020~~). This is the case herein: particularly          after          Defendant          Donaldson          shot          Axel in the hindquarters, the incapacitated dog posed no threat to the officers. See~~); *Plowright v. Miami-Dade Cnty.*, 102 F.4th 1358, 1361 (11th Cir. ~~2024) (concluding that a police officer's shooting of an incapacitated dog, in the absence of a reasonable threat of imminent danger, constituted a clearly established violation of the Fourth Amendment even in the absence of directly-on-point caselaw~~2024).

56.70.   ~~56. Conversely, many~~ Courts have ~~concluded the application~~found similar applications of force ~~was~~unreasonable in ~~similar factual circumstances as this case. Shooting a dog          in          its          own          backyard          when          the          owner~~

was a few feet away was found to be unreasonable.comparable facts. See, e.g., *Andrews v. City of W. Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006). Similarly, when a dog posed no immediate danger and the owner was looking on, obviously desirous of retaining custody, the use of lethal force was unreasonable. Brown v. at 918; *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 208–09 (3d Cir. 2001). There was no reasonable

justification to shoot Axel when he was not posing an identifiable threat and was in his owner's yard in the presence of the owner. See 2001); *Moore v. Town of Erie,* Civil Action No. 12-cv-02497 CMA MJW,

, 2013 U.S. Dist. LEXIS 101298 (D. Colo. July 19, 2013). Similarly, when a dog's owner offered to put their dog in the bathroom while police executed a warrant, an officer acted unreasonably when they ignored the offer and fatally shot the dog when it walked into the living room.); *Russell v. City of Chicago*, 2011 WL 7178888 (N.D. Ill.).

57.71.  57. As a direct and proximate result of Defendants' conduct and actionsaction, Plaintiffs

Lewis and McLaughlin have suffered and continue to suffer injuries and damages, including but not limited to: infringements and deprivations of their constitutional rights, including; deprivation of their companion animal and property; great fear for their liberty and security; pain of the mind as well as the body; mental anguish and distress; anxiety; and injury to their faith in society, and consternation.

58.72.  58. The acts of Defendants, as described herein, were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Plaintiffs Lewis    and

~~McLaughlin, thus,~~ entitling them to ~~an award of~~ punitive damages against the individual

Defendants ~~————————————————————————————————— Donaldson~~

~~and Lewis~~.

### ~~59.~~ THIRD CLAIM (Donaldson & Lewis) – 42 U.S.C. § 1983

### Warrantless Entry/Search of Curtilage – Individual Capacities

73.     All of the foregoing paragraphs are incorporated by reference.

74.     Defendants entered and searched the curtilage of Plaintiffs' home without a

warrant, consent, or exigent circumstances, exceeding any implied license to approach for a knock-

and-talk.

75.     Defendants' conduct violated clearly established Fourth-Amendment law and

proximately caused Plaintiffs' damages.

76.     Plaintiffs seek compensatory damages and punitive damages against the individual

Defendants to the extent allowable by law, as well as reasonable attorney's fees and costs under

42 U.S.C. § 1988.

As a result of ~~Defendants Donaldson and Lewis's~~Defendants' unlawful actions and
infringements of their protected rights, Plaintiffs ~~Lewis and McLaughlin~~ have been compelled to
retain counsel in ~~this matter and are therefore entitled to a recovery of attorneys' fees and legal~~
~~costs pursuant to 42 U.S.C. § 1988.~~
~~WHEREFORE, Plaintiffs Michael Lewis and Deena McLaughlin respectfully pray that this~~
~~Court enter judgment in their favor, under 42 U.S.C. §§ 1983 and 1988, against Defendants~~
~~Daniel~~
~~Donaldson and Thurston Lewis, in their individual and official capacities, and award Plaintiffs~~
~~Michael Lewis and Deena McLaughlin any and all compensatory damages, pre-judgment~~
~~interest,~~
~~post-judgment interest, punitive damages, attorneys' fees, expenses, costs, and any other such~~
~~relief to which they are entitled and that this Court deems just, appropriate, and consistent with~~
~~the~~
~~important purposes of 42 U.S.C. § 1983.~~
~~60. THIRD CLAIM (City of Lansing) – Violation of Federal Constitutional~~
~~Guarantees (42 U.S.C. § 1983), as to City, based on defective training, resulting in the~~
~~unconstitutional Fourth Amendment seizure of Axel by Defendants Donaldson and Lewis~~
~~without~~

due process of law in violation of the Fourteenth Amendment. Plaintiffs hereby incorporate the preceding paragraphs by reference as if set forth fully herein.

61. As described herein, Defendants Daniel Donaldson and Thurston Lewis, while acting under color of state law, deprived Plaintiffs Michael Lewis and Deena McLaughlin of their

rights, privileges, and immunities as secured by the Constitution of the United States of America in the unlawful seizure of Axel, Plaintiffs' pet and companion animal, by shooting and killing him without due process of law.

62. Defendant City of Lansing's training program and disciplinary policies regarding its police and animal control operations were non-existent, inadequate, and/or failed to provide Defendants Donaldson and Lewis and City employees with the necessary knowledge and skills to

carry out their duties (including that they operated as animal control), and/or allowed them to routinely violate the rights of individuals without fear of repercussion or sanction, including but not limited to failures to train Defendants Donaldson and Lewis on the proper use of a catchpole and the proper process and procedures for capturing and impounding animals. See Zuchel v. City & Cnty. of Denver, 997 F.2d 730, 741 (10th Cir. 1993) (finding evidence "clearly sufficient to permit the jury reasonably to infer that Denver's failure to implement . . . recommended [periodic

live 'shoot- don't shoot' range training] constituted deliberate indifference to the constitutional rights of Denver citizens").

63. Defendant City of Lansing knew that its police officers and City employees and staff would routinely be in a position of responding to calls and reports of lost or stray animals.

64. By failing to properly train its officers and employees regarding these encounters, Defendant City of Lansing acted with deliberate indifference to the fact that its failure to provide such training, supervision, and discipline would result in the unlawful killings and deaths of family pets and, thereby, result in deprivations of the constitutional rights of the citizenry, such as

those suffered by Plaintiffs Lewis and McLaughlin. See City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197 (1989).

65. As a direct and proximate consequence of the acts of Defendant City of Lansing, Plaintiffs Lewis and McLaughlin have suffered and continue to suffer damages in the form of, inter alia, deprivation of their constitutional rights as guaranteed under the Fourth and Fourteenth Amendments and as protected by 42 U.S.C. § 1983.

66. As a result of the actions of the individually named Defendant Donaldson and Defendant City of Lansing, Plaintiffs Lewis and McLaughlin have suffered and continue to suffer

injuries and damages, including but not limited to: infringements and deprivations of their constitutional rights, including deprivation of their companion animal and property; great fear for their liberty and security; pain of the mind as well as the body; mental anguish and distress; anxiety; loss of wages and income; injury to their faith in society; and consternation.

     59.77.  67. As a result of Defendant City of Lansing's unlawful actions and infringements

of

their protected rights, Mr. Lewis and Ms. McLaughlin have been compelled to retain counsel in

this matter and are therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

~~WHEREFORE,~~**FOURTH CLAIM (City of Lansing) – 42 U.S.C. § 1983**

**Municipal Liability (Monell)**

78.     All of the foregoing paragraphs are incorporated by reference.

79.     This claim is for violation(s) of Federal Constitutional Guarantees as to City, based on defective training, resulting in the unconstitutional Fourth-Amendment seizure of Axel by Defendants Donaldson and Lewis without due process of law in violation of the Fourteenth Amendment.

80.     As described herein, Defendants Daniel Donaldson and Thurman Lewis, while acting under color of state law, deprived Plaintiffs ~~Michael Lewis and Deena McLaughlin~~of rights secured by the Constitution in the unlawful seizure of Axel by shooting and killing him without due process of law.

81.     Defendant City of Lansing's training program and disciplinary policies regarding its police and animal-control operations were non-existent or inadequate, and/or failed to provide officers with the necessary knowledge and skills to carry out their duties (including animal control), and/or allowed routine violations of rights without repercussion, including failures to train on proper catch-pole use and impound procedures. See *Zuchel v. City & Cnty. of Denver*, 997 F.2d 730, 741 (10th Cir. 1993).

82.     Defendant City of Lansing knew its officers and employees would routinely respond to reports of lost or stray animals.

83.     By failing to properly train, supervise, and discipline regarding these encounters, the City acted with deliberate indifference, and that failure was a moving force behind the

deprivation of constitutional rights suffered by Plaintiffs. See *City of Canton v. Harris*, 489 U.S. 378 (1989).

84.     As a direct and proximate consequence of the acts of Defendant City of Lansing, Plaintiffs have suffered and continue to suffer damages, including deprivation of constitutional rights as guaranteed under the Fourth and Fourteenth Amendments.

85.     As a result of Defendant City of Lansing's unlawful actions, Plaintiffs have been compelled to retain counsel and are entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE    Plaintiffs    respectfully    pray    ~~that this Court enter~~for judgment ~~in their favor, under 42 U.S.C. §§ 1983 and 1988,~~ against Defendant City of Lansing~~, and award them any and all~~ for compensatory damages, punitive damages (if allowed by law) attorneys' fees under 42 U.S.C. § 1988, expenses, ~~costs; issue an order requiring prevention of future constitutional violations; and any other such relief to which they are entitled and that this Court deems just,~~ costs, and appropriate~~, and consistent                                                                        with the important purposes of~~ declaratory/equitable relief.

**FIFTH CLAIM (Donaldson, Lewis & City of Lansing) – 42 U.S.C. § 1983**

**Procedural Due Process – Alternative**

86.     All of the foregoing paragraphs are incorporated by reference.

87.     In the alternative to Plaintiffs' Fourth-Amendment seizure theory, Defendants summarily destroyed Plaintiffs' property (Axel) without any pre- or post-deprivation process, despite City impound/notice/holding procedures.

88.     The City's policies/customs—including the absence of any required use-of-force

reporting when officers shoot animals and failure to implement impound procedures—reflect deliberate indifference and were a moving force behind the deprivation.

WHEREFORE Plaintiffs pray for compensatory damages and reasonable attorney's fees and costs under 42 U.S.C. § 1988 against Defendants.

## PENDENT STATE CLAIMS

### 68. FOURTH**SIXTH** CLAIM –: **Conversion and/or Trespass to Chattels**. Defendants permanently deprived

89.    All of the foregoing paragraphs are incorporated by reference.

90.    Plaintiffs of theirowned and had the right to immediate possession of Axel.

60.91.  Defendants intentionally exercised dominion and control over that property, Axel, without their consent, by injuringshooting and killing himAxel—including a final "put-down" shot after incapacitation—and by removing his body, thereby seriously interfering with Plaintiffs' rights of possession. These acts constitute conversion.

92.    69. FIFTHIn the alternative, Defendants' conduct constituted trespass to chattels by intentionally dispossessing Plaintiffs of Axel and/or impairing his condition and value.

93.    As a direct and proximate result, Plaintiffs suffered damages recoverable under Kansas law.  Plaintiffs seek all compensatory damages against Defendants permitted by law.

94.    Under Kansas law, for injury or destruction of a pet dog, which is personal property, Kansas permits damages beyond bare market value where the animal has little or no discernable market value.

95.    Relevant factors that determine damages include, but are not limited to, the reasonable and customary cost of  care and treatment, replacement cost, loss of use, **and any *special value to the owner*.**

96.    For a pet killed, recoverable damages include the animal's market value (if any) or actual value to the owner measured by the factors outlined in paragraph 77, together with reasonably incurred related expenses.

**SEVENTH CLAIM – – Outrage/Reckless Infliction of Emotional Distress.**

97.    All of the foregoing paragraphs are incorporated by reference.

61.98. Defendants' unjustified, injuring and summary destruction of Plaintiffs' dog constituted intentional or reckless conduct which was so extreme and outrageous as to be regarded as utterly atrocious or intolerable in a civilized society and which caused the Plaintiffs extreme and severe mental distress.

**70. SIXTHEIGHTH CLAIM – Negligence.**

99.    All of the foregoing paragraphs are incorporated by reference.

62.100.    Defendants breached their duty of care to prevent foreseeable harm, to wit: Defendants Donaldson and Lewis inflicted the injury, and who directly caused the destruction and death of Plaintiffs' dog, and caused them significant monetary and emotional damage.

**NINTH CLAIM – Negligence Per Se**

101.    All of the foregoing paragraphs are incorporated by reference.

102.    The City Code establishes standards for humane capture, impound/notice/holding, and authorized non-lethal control; Plaintiffs are within the class those provisions protect; and the harm suffered is of the type of those provisions were designed to prevent.

103.    Defendants' violations of these provisions constitute negligence per se, proximately causing Plaintiffs' damages.

104.    In the alternative, even if negligence per se is not applied, the cited ordinance provisions establish the applicable standard of care for ordinary negligence; Defendants' violations constitute breach of duty and are admissible as evidence of negligence. This alternative is pled in addition to, and consistent with, Plaintiffs' existing negligence claim.

63.105.        Plaintiffs Lewis and McLaughlin reserve the right to amend this Complaint to raise additional, alternative claims for relief as discovery commences.

Plaintiffs respectfully request entry of judgment, jointly and severally where permitted, awarding:

A.  Compensatory damages in an amount to be determined at trial;

B.  Punitive damages on the §1983 and state-law claims where allowed by law;

C.  Declaratory relief under 28 U.S.C. § 2201 that the policies/customs/training failures and the complained-of conduct violate the Fourth Amendment;

D.  Equitable relief as warranted by Article III (including policy/training/reporting reforms, if supported by standing and proof);

E.  Reasonable attorney's fees and costs under 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)/28 U.S.C. § 1920;

F.  Pre-judgment interest (including under K.S.A. 16-201 where applicable) and post-judgment interest under 28 U.S.C. § 1961;

G.  As to state-law claims, Plaintiffs will move for leave to amend prior to the final pretrial conference to assert punitive damages under K.S.A. 60-3703; and

H.  Plaintiffs further request all other and further relief the Court deems just and proper.

Respectfully submitted ~~on this ____ day of June, 2025.by,~~

~~/s/ Jay VanBlaricum~~
~~Jay P. VanBlaricum, KS 21662~~
*Barnett Law Office, LLC*

/s/ Katie B. Barnett
Katie B. Barnett, #25134
P.O. Box 442193
Lawrence, KS 66044
Tel: (785) 727-9789
katie@barnettlawoffice.com

*Downing, Davey, Vokins & Mann, LLC*

/s/ Tai J. Vokins
Tai J. Vokins, #23707
Danielle N. Davey, #24205
831 Massachsuetts, Suite B
Lawrence, KS 66044
Tel:  (785) 330-5577
Fax  (785) 258-6115
tvokins@ddvmlaw.com
ddavey@ddvmlaw.com
~~jay@barnettlawoffice.com~~

Attorneys for Plaintiffs